IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Elsebeth Baumgartner, | : | Case No. 3:07 CV 0878 |
| Petitioner, | : | |
| v. | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Robert L. Bratton, Warden, | : | |
| Respondent. | : | |

This case, filed pursuant to 28 U.S.C. § 2254[1], was automatically referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2(b)(2)[2]. Pending is the Petition for Writ of Habeas Corpus (Docket No. 1) to which Respondent filed an Answer/Motion to Dismiss (Docket No. 25) and Petitioner filed a Traverse (Docket No. 29). For the reasons that follow, the Magistrate recommends that the Court

---

[1]
The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
28 U.S.C.A. § 2254 (Thomson/West 2007).

[2]
The Clerk shall refer all *pro se* petitions for habeas corpus filed under 28 U.S.C. § 2254, provided such petition has first been reviewed by the Court pursuant to 28 U.S.C. § 1915(d) and Rule 4 of the Rules Governing § 2254 Cases and a decision has been made to require a response to the petition, to a Magistrate Judge for a Report and Recommendation as provided in Local Rule 72.1, *Duties of United States Magistrate Judges*.

grant the Motion to Dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), PUB. L. NO. 104-132, 110 St. 1214 (April 24, 1996), in a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment in state court, the factual findings made by a state court in the direct appeal shall be presumed to be correct. *Keith v. Mitchell*, 455 F. 3d 662, 666 (6th Cir. 2006) (*citing* 28 U. S. C. § 2254 (e) (1) (2006)).

The facts giving rise to this case are set forth in the decision of the Sixth District Court of Appeals filed March 7, 2008. The Court of Appeals affirmed the decision of the Ottawa County Common Pleas Court finding Petitioner in contempt (Docket No. 25, Exh. 2). In 2001 Petitioner sued a former member of the Benton-Carroll-Salem School Board for what she characterized as a civil assault. The board member interposed a counterclaim, alleging that Petitioner had defamed him. In January 2004, following the recusal of four prior judges on the case, the Chief Justice of the Supreme Court of Ohio appointed retired Judge Richard M. Markus to the case. Judge Markus presided over the case to its completion in December 2004. Petitioner's claim was eventually dismissed. The school board member ultimately prevailed on the counterclaim.

On December 10, 2004, contemporaneous with the court's final judgment on the merits, Judge Markus filed an "Opinion and Order for Criminal Contempt Citation." In this document, Judge Markus enumerated 32 separate statements contained in eight documents filed with the court by appellant during the course of the litigation. These statements, he concluded, constituted, "* * * repeatedly contemptuous conduct [which] brought the administration of justice into disrespect, with wildly unjustified verbal attacks on adverse counsel and each judge, which tended to embarrass, impede, and obstruct the court in the

performance of its function."

On August 13, 21004, [sic] Petitioner filed a document with the Ottawa County Court of Common Pleas Clerk of Court, in which she stated: on or about January 22, 2004, Judge Markus ... appeared in a secret pre-trial hearing in case no 02CVH025 without appointment to the case. Later, Chief Justice Moyer allegedly filed a back-dated assignment notice in the case.

On May 27, 2004, Judge Markus appeared for the first scheduled pre-trial in this case even though he had been served with an Affidavit of Bias and Prejudice which stayed the proceedings. After an ex-parte discussion with Chief Justice Moyer, Judge Markus proceeded with the stayed pre-trial conference during which he set a trial date. Petitioner contends that Judge Markus failed to provide counterclaim defendants with any record of the pretrial.

On September 3, 2004, Petitioner filed a document with the Ottawa County Common Pleas Clerk of Court objecting to the rulings of Judge Markus.[3] On September 24, 2004, Petitioner filed a document with the Ottawa County Common Pleas Clerk of Court, designated as a counterclaim[4].

---

[3]

Petitioner stated in her pleading: "II A."Elsebeth Baumgartner would like an explanation from Judge Markus for his apparent negligence in supervision of the conduct of court officers in this case and how he expects her to prepare for trial." B. 'Instead of recognizing the egregious harassment presented by subpoening [sic] a stranger to the case on one day Notice, Judge Markus rewards bad behavior by ultimately giving Steve Mosier [adverse counsel] something to which he is not entitled, namely a fishing expedition with a witness who knows nothing about this case. Judge Markus accomplishes this by ignoring his published book opting instead for Mr. Mosier's tortured use of the Federal Rules of Civil Procedure. Further, Judge Markus provides no clue for the basis of his authority in ordering a stranger to the case to be deposed for 6 hours, at a time and place set by the judge after apparently checking first with Mr. Mosier via an *ex-parte* communication.' " Docket No. 25, Exhibit 2, ¶s 10 & 11.

[4]

"III A. 'Counterclaim Defendant includes herein a list of Objections specifying misleading and false statements by Judge Markus that leads to the very strong appearance of his being bribed in this case.' "B. 'Steve Mosier [adverse counsel] and Kellen Smith [counterclaim plaintiff] committed the crime of falsification by continuing to mislead the Sixth District Court of Appeals by claiming they needed discovery in order to file a libel case when in fact they had already filed a libel case . . .' "C. 'The history of the misconduct of both attorneys and judges in this case was set forth in a Motion to Quash Deposition Notice of Jeff McConnell [written and filed by Elsebeth Baumgartner] and is again set forth below.' "D. 'On or about January 27, 2004 elderly Richard Markus of faraway Fairview Park Ohio a retired judge appeared at a secret pretrial hearing in case no 02CVH025 without appointment to the case claiming he had been appointed to [sic] Chief Justice Moyer to adjudicate all of Elsebeth Baumgartner's cases.' ". 'In a letter sent by Attorney John Schneider [one of Elsebeth Baumgartner's previous counsel in this case], he mis-represented that Judge Markus orally approved their withdrawal in this case prior to a pre-trial and without transfer of the filed

On November 24, 2004, Petitioner filed a document with the Ottawa County Common Pleas Clerk of Court alleging, *inter alia,* that she was being denied access to the courts.[5] On December 1, 2004, Petitioner filed a document entitled "Objections of Elsebeth Baumgartner, etc." with the Ottawa County Common Pleas Clerk of Court[6]. On December 1, 2004, Petitioner filed a second document entitled 'Notice

---

[sic] sometime between March 2004 and March 22, 2004. This is a false statement because Judge Markus was in South Africa during this time frame and certainly not attending to his judicial duties. Of course this is easily disproven by the Clerk producing a copy of the fax transmission of the Withdrawal motion to South Africa and some authority in law that permits a retired visiting judge to preside over cases while in a foreign country.' " F. 'On May 27, 2004, Richard Markus appeared for the first scheduled pretrial in this case even though he'd been served with an Affidavit of Bias and Prejudice that stayed the proceedings. After an ex parte discussion with Chief Justice Moyer, Richard Markus proceeded with the stayed pretrial conference, set a trial date and failed to provide counterclaim defendants with any record of the pretrial.' " G. 'The Cleveland Plain Dealer recently reported that a judge responds to an Affidavit of Bias and Prejudice 7 days after filing after which Chief Justice Moyer ruled on the merits. . . . Judge Markus does not seem to understand procedure.' "H. 'On or about July 28, 2004, Judge Moon reentered this case by filing an entry denying a jury trial.' 'Judge Markus now fraudulently suggests that he approved the entry of the administrative judge in this case on a temporary basis even though there is no written record and he has no authority to approve anything Judge Moon does.' ' I. During the July and August 2004, Counterclaim Defendant Elsebeth Baumgartner engaged in communications with Attorney Richard Markus . . .' J. 'Counterclaim defendant requested a protective order in her motion but as has become the practice of Judge Markus, he failed to follow the Rules of Civil Procedure and never rules on Motions to Quash.' "K. 'Instead in an entry dated Augsut [sic] 25, 2004 he misrepresented the date of Jeff McConnell's scheduled deposition as August 16, 2004 in a disingenuous effort to grant Mr. Mosier's Motion for Reconsideration of his decision quashing Mr. McConnell's deposition dated August 16, 2004 while at the same time fabricating evidence to support Mr. Mosier's pending false Motion for Default Judgment.' "L. ¶42. 'Judge Markus represents that counsel informed both herself and Cleveland Genomics, Inc. of a nonexistent pretrial scheduled for January 22, 2004. If Judge Markus had only recorded pre-trials as he should he could prove that this happened but given that the docket reflects there was no pretrial, Judge Markus appears to be delusional.' "M. 'What more can this Christian woman expect from Judge Markus? Perhaps he intends to tie her up and torture her to death, all to be filmed of course for the viewing pleasure of his misogynistic master Tom Moyer. After all there isn't much more the mob can do to silence this lady about racketeering in the courts.'˝ Docket No. 25, Exhibit 25, ¶s 13-26.

[5]

IV. "A. 'The Ottawa County Municipal Court contains secret records in a unnumbered case file directly related to this case. Those documents prove a pattern of denying access to the courts as well as equal protection of the law to women, children and minorities in Ottawa County in order that certain government insiders such as Kellen Smith [counterclaim plaintiff in this case] may be personally benefited. The defendant in this case [Elsebeth Baumgartner] has lived in terror and fear of her life for over 4 years after her discovery of thefts of public funds from the Benton Carroll Salem Local school district via fraudulent contracts as well as a network of politically connected insiders engaged in illegal drug and sex crimes including the abuse of children.' "B. 'This defendant [Elsebeth Baumgartner] cannot prepare for trial in fear that she will be illegally incarcerated and held without hearing as before simply because the Plaintiff [Kellen Smith] and his attorney need to protect lucrative racketeering schemes.' "C. 'This defendant maintains that court officers openly fixed cases both criminal and civil in this county and elsewhere . . . . This is the reason why she has been abused for 4 years, not because of what she did because of what she knows.'˝ Docket No. 25, Exhibit 2, ¶s 28-30.

[6]

V. "A. 'Richard Markus is not a lawfully appointed judge in the State of Ohio and these proceedings are a nullity.' "B. 'Court officers including Richard Markus and Steve Mosier have filed multiple false statements in this case.' "C. 'Elsebeth Baumgartner and Cleveland Genomics, Inc. were severely prejudiced by Richard Markus' allowing their counsel to withdraw without Notice in March 2004 while Richard Markus was not even in the United States.' "D. 'Current counsel Robert Lynch, confined to a wheelchair has been denied discovery and an opportunity to prepare for this trial due to hidden agenda of Richard

4

to the Court of Allegations, etc.' with the Ottawa County Common Pleas Clerk of Court.[7]

On December 3, 2004, Petitioner filed a document with the Ottawa County Common Pleas Clerk of Court.[8] The Chief Justice appointed a different visiting judge to preside over the hearing on Judge Markus' contempt complaint[9]. At trial, Judge Markus testified that the assertions appellant made in her

---

Markus and his desire to put his personal interest and schedule above providing a fair adjudication on the merits.' "E. 'Elsebeth Baumgartner is a born again Christian of Northern European heritage subject to an illegal bench warrant. She objects to the outrageous prejudice of Richard Markus as manifested by his refusal to protect her and her witness from intimidation and to provide her with an opportunity to defend herself by access to her case files, discovery a jury trial and accommodation to her disabilities. Elsebeth Baumgartner asserts such discrimination is based on religion, gender, political views, and race due to her association with oppressed minorities such as African American Krista Harris and her Northern European ethnicity. Elsebeth Baumgartner suspects Richard Markus to be a Zionist of the belief that his people are the chosen people of God and superior to all others with the right to deprive Christians or "gentiles" of their rights especially those of Northern European heritage and or Germanic origins.' ˝ Docket No. 25, Exhibit 2, ¶s 32-36.

[7]

"A. 'PLEASE TAKE NOTICE, attorneys for Kellen Smith are alleged to have filed false documents in the United States bankruptcy court for the Southern District of Florida in order to advance the harassment of Elsebeth Baumgartner by means of this lawsuit a Strategic Law Suit Against Public Participation so as to thwart inquiry into a child abuse/pornography/sex ring involving public officials, attorneys, judges and members of the Toledo Catholic Diocese. "B 'PLEASE TAKE NOTICE, Elsebeth Baumgartner objects for herself and her codefendant and employer Cleveland Genomics, Inc. that there is more than the appearance of judge shopping in this case but that in fact Richard Markus was intentionally illegally appointed to this case and all other cases by Tom Moyer to affect a pre-determined outcome.' "C. 'PLEASE TAKE NOTICE, that Richard Markus is implicated in election fund raising fraud having illegally donated money to Thomas J. Moyer, the subject of a pending criminal elections complaint set for hearing on December 17, 2004 before the Ohio Elections Commission, while employed by the Supreme Court of Ohio.' "D. 'PLEASE TAKE NOTICE, Richard Markus operated a private for-profit corporation out of his home while at the same time claiming to be a General Division Judge for the State of Ohio, (a nonexistent office not authorized by the legislature). Documents filed in this case indicate a co-mingling of his private rent a judge services with his state provided judicial services.' "E. 'PLEASE TAKE NOTICE, Richard Markus has filed numerous false statements of fact in this case and other cases that have been brought to the court's attention without effect.' ˝ Docket No. 25, Exhibit 2, ¶s 28-42.

[8]

"A. 61. 'Movant requests the Court take judicial notice per EVID. R 201 and incorporates by reference the Complaint for Removal of Ottawa County [Prosecuting Attorney Mark Mulligan filed in the] Court of Common Pleas and directs the Court's attention that the complaint contains criminal charges that Prosecutor Mulligan conspired with Sheriff Emahiser, Judge Paul Moon, Judge John Adkins, Attorney William Connelly, Attorney Charles Burns, Attorney Timothy Braun, Attorney Lori Brown of the Supreme Court and or others to engage in corrupt activity by manipulation of court cases to protect thefts of public resources through fraudulent contract schemes and or the kidnapping of Petitioner [Elsebeth Baumgartner].' "B. ¶64. 'Movant suggests it is time for the Honorable Judge to demonstrate that he does not discriminate in the application of the law but protects women childrens and minorities rights every bit as zealously as he protects white males such as himself.'" Docket No. 25, Exhibit 2, ¶s 44 & 45.

[9]

Judge Markus submitted two additional "supplementary" contempt citations after the initial accusations, but these were not considered in these proceedings.

pleadings were baseless and her conclusions untrue. He also opined that he believed that appellant's sole reason for interposing these assertions was to disrupt the proceedings and bring the judicial system into disrepute. He also testified that he is a Lutheran. Testifying in a five hour narrative, Petitioner contended that she had uncovered massive corruption in various governmental areas and was being persecuted for revealing such misdeeds. She accused various public officials, including the Ottawa County Prosecuting Attorney, the Erie County Prosecuting Attorney and the Chief Justice of the Supreme Court of Ohio as participants in this persecution. Beyond her own testimony, she offered no proof as to these allegations or those which were the subject of her contempt citation.

Following the hearing, the court found that Petitioner was in contempt for 27 of the 32 citations issued. The court found that, although the statements in "Count II A and B" were "insolent" and "not effective advocacy," they were issues of legitimate inquiry. The court also declined to find contemptuous those statements contained in Count III (C), (G) and (I). At sentencing, the court imposed a $2,700 fine ($100 for each count) and 120 days incarceration (20 days for each of the six counts) (Docket No. 25, Exhibit 11).

Petitioner perfected an appeal in the Court of Appeals for the Sixth Appellate District, Ottawa County, Ohio[10] (Docket No. 25, Exhibit 2). The Court of Appeals affirmed the judgment of the trial court,

---

[10] Petitioner asserted eight assignments of error. First, "Defendant-appellant's convictions violate due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution because the Ohio standards purporting to the [sic] define what constitutes indirect criminal contempt are void for vagueness in that they do not give fair notice of what conduct is prohibited". Second, "the Ohio standards under which a person can be found guilty of indirect criminal contempt are content-based, overbroad and vague, reach a substantial amount of constitutionally protected conduct and unlawfully target a particular viewpoint facially and as applied, in violation of the First Amendment to the United States Constitution and Section 11, and Article I of the Ohio Constitution." Third, "the prosecution of defendant-appellant for statements she made within legal documents violated her right of access to the courts, due process, and her right to petition for redress of grievances under the First and Fourteenth Amendments, the right to be free from retaliation for exercising her First Amendment rights under the equal protection clause and her rights under Article Four of the United States Constitution and Section 11, Article I of the Ohio Constitution." Fourth, "Defendant-appellant was denied counsel to which she was entitled under the Sixth Amendment to the United States Constitution in Article I, Section 10 of the Ohio Constitution without any

ordering Petitioner to pay costs of the appeal and costs accrued in the trial court (Docket No. 25, Exhibit 2, ¶ 101). The Supreme Court of Ohio declined jurisdiction and dismissed the appeal[11] (Docket No. 25, Exhibit 12). Petitioner filed a Petition Under 28 U. S. C. § 2254 for Writ of Habeas Corpus on March 26, 2007. Her sentence ended on March 27, 2007 (Docket No. 1, p. 6, (b)).

## JURISDICTION

This Court has jurisdiction to consider a Petition for a Writ of Habeas Corpus on behalf of a person

---

constitutionally required waiver, and was denied the ability to represent herself during a critical stage of the proceedings." Fifth, Defendant-appellant's convictions and sentence on 27 counts of indirect criminal contempt violates the double jeopardy clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, where many of the counts arose out of the same conduct or pattern of conduct with a single animus." Sixth, Defendant-appellant's right to confront witnesses under the Sixth Amendment to the United States Constitution and under Section 10, Article I of the Ohio Constitution was violated when the complaining witness was permitted to testify to extremely damaging impermissible hearsay statements made by declarants who never appeared in court and were thus not subject to being cross-examined. The admission of these statements also violated Mrs. Baumgartner's right to a fair trial under the Fourteenth Amendment to the United States Constitution." Seventh, "Appellant's conviction must be reversed because the state failed to prove beyond a reasonable doubt that Ms. Baumgartner's conduct was contemptuous, in violation of the Fourteenth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution and/or her convictions are not [sic] against the manifest weight of the evidence. Eighth, Appellant's rights under the Fourteenth Amendment to the United States Constitution in Article I, Section 16 of the Ohio Constitution were violated by virtue of the fact that the presiding judge and trier of fact was a retired 'visiting judge.'"

Docket No. 25, Exhibit 2, ¶s 50-57.

[11]

In the Memorandum in Support of Jurisdiction, Petitioner alleged that "(1) The common law standard for indirect criminal contempt in Ohio is unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution because it does not provide faire notice to the public of what conduct is prohibited. (2) The common law and statutory standards for indirect criminal contempt in Ohio are content-based, overbroad and vague in violation of the First Amendment to the United States Constitution and Article I, Section 11 of the Ohio Constitution facially and as applied to Appellant, because they unlawfully target a particular viewpoint and reach a substantial amount of constitutionally protected conduct in the areas of speech. (3) The selective prosecution and incarceration of a pro se litigant because of, or in retaliation for, the litigant's having made written statements within legal documents which demean the presiding judge, parties, opposing counsel, the judiciary as a whole and/or which tend to bring the administration of justice into "disrepute," and for having made statements, outside of the proceedings, critical of other public officials - violates the litigant's rights under the due process clause, the First Amendment, the Equal Protection Clause and Article IV of the United States Constitution along with Section 11, Article I of the Ohio Constitution. (4) The court may not deny a person charged with indirect criminal contempt trial counsel without first making inquiries and providing rigorous warnings to ensure that she has knowingly, voluntarily and intelligently waived her right to counsel and if such person requests counsel and claims indigency prior to the commencement of trial, the court must make a full inquiry into the matter of indigency to satisfy the demands of the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. (5) The Fourteenth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution prohibit a pro se litigant from being found guilty of indirect criminal contempt, and such finding is against the manifest weight of the evidence, where her conduct, which occurred over a period of months, did not at all impede the progress of the action from moving forward and the presiding judge deliberately chose not to cite the litigant with contempt until the conclusion of the case, and where neither the judge nor anyone else was insulted by language which formed the basis for contempt citations."

in custody pursuant to the judgment of a state court only on the grounds that he or she is in custody in violation of the Constitution or laws or treaties of the United States. *Leslie v. Randle*, 296 F. 3d 518, 521(6th Cir. 2002) (*citing* 28 U.S.C. § 2254 (Thomson/West 2002)). The "in custody" requirement of the habeas corpus statute is designed to preserve the Writ of Habeas Corpus as a remedy for severe restraints on individual liberty. *Id*. (*citing Hensley v. Municipal Court*, 93 S. Ct. 1571, 1574-1575 (1973)).

Petitioner satisfies both prongs of the requirements for habeas jurisdiction. First, at the time she filed the Petition, Petitioner was is in the custody of the Ottawa County Detention Facility. Consequently, Petitioner was "in custody" for purposes of habeas jurisdiction.

Second, Petitioner alleges that the trial court violated rights guaranteed her under the First, Fourth, Sixth and Fourteenth Amendments of the United States Constitution (Docket No. 1). Such allegations, if true, are phrased sufficiently to allege constitutional violations. Accordingly, this Court has jurisdiction to issue a habeas writ.

## HABEAS CORPUS STANDARD OF REVIEW

In determining whether to issue a habeas writ, the standards set forth in the AEDPA govern the district court's review of a state court decision. *French v. Jones,* 332 F.3d 430, 435-436 (6th Cir. 2003), *cert. denied,* 124 S. Ct. 581 (2003). The AEDPA only provides habeas relief for a state prisoner in certain circumstances. *Id.* An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Id.* (*citing* 28

U.S.C. § 2254(d) (2001)).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Id.* Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

## **DISCUSSION**

In the Writ, Petitioner seeks an order vacating her conviction and releasing her from custody. She argues that her conviction should be overturned for the reasons that (1) the statute on which her conviction was based was vague and overly broad, (2) Ohio's law on indirect criminal contempt is overly broad and vague; (3) the prosecutor retaliated against her for exercising her First Amendment right to engage in free speech; (4) similarly situated males were not punished for making similar statements; (5) she was deprived of the right to an appointment of counsel; (6) her conviction violates the Double Jeopardy Clause; (7) the prosecutor failed to prove the charges against her beyond a reasonable doubt; (8) she was deprived of the right to confront witnesses against her; (9) she was deprived of the right to a speedy trial; and (10) her sentence violates the prohibition against cruel and unusual punishment.

In her Return of Writ, Petitioner concedes that she has procedurally defaulted claims four, six, eight, nine and ten. She abandons those claims (Docket No. 29). Although Respondent finds Petitioner's claims without merit, Respondent agrees that claims one, two, three, five and seven were timely filed and not procedurally defaulted.

Title 28 U.S.C. § 2254(a) provides in relevant part, "[A] district court shall entertain an application

9

for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he/she is in custody in violation of the Constitution or laws or treaties of the United States." *Yates v. Wilson*, 2008 WL 755271, *13 (N. D. Ohio 2008).  Federal jurisdiction attaches when a petitioner in custody files a petition for a writ of habeas corpus.  *Id.*  Jurisdiction is not defeated solely by the release of the petitioner before completion of proceedings on the application.  *Id.* (*citing Carafas v. LaVallee,* 88 S. Ct. 1556, 1559 (1968)).  When petitioner continues to suffer "collateral consequences" of an imposed sentence sufficient to give the petitioner "a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him," the cause is not moot.  *Id.* (*citing Carafas,* 88 S. Ct. 1556. at 1559; *quoting Fiswick v. United States,* 67 S. Ct. 224, 230 (1946)).

      Collateral consequences are sufficient to avoid mootness when they are severe, immediate (i.e., not speculative), and not shared by the public generally.  *Id.* at *14 (*citing Hensley v. Municipal Court,* 93 S. Ct. 1571, 1575 (1973)).  Collateral consequences sufficient to avoid mootness include restraints on liberty accompanying release on recognizance pending trial.  *Id.* ( *citing Hensley,* 93 S. Ct. at 1575; *Justices of Boston Municipal Court v. Lydon*, 104 S. Ct. 1805, 1819 (1984)) and civil disabilities resulting from a felony conviction.  *Id.* (*citing Carafas,* 88 S. Ct. at 1559)).  They do not include such non-statutory consequences as diminished employment prospects or possible effects on sentences in potential future criminal proceedings.  *Id.* (*citing Lane v. Williams,* 102 S. Ct. 1322, 1327 (1982)).  .

      At the time the Petition was filed, Petitioner had been sentenced and was in the custody of the Ottawa County Detention Facility housing defendants charged with misdemeanor offenses.  While this case was pending, Petitioner's sentence expired and she was released from custody.  As a practical matter, the controversy has been mooted and Petitioner no longer has a legally cognizable interest in the outcome. Accordingly, the Magistrate must address a substantial question of whether collateral consequences exist

that are sufficient to avoid mootness.

Petitioner has not alleged a concrete and continuing injury, beyond the obvious fact that she could face some adverse collateral legal consequences, that can be remedied by granting the writ. Specifically, this Court cannot nullify a state court decision convicting Petitioner of a misdemeanor. The Sixth Circuit Court of appeals presumed that a wrongful conviction has continuing collateral consequences. *Gentry v. Dueth*, 456 F. 3d 687, 694 (6th Cir. 2006) *cert. denied*, 127 S. Ct. 838 (2006). In *Gentry,* the habeas petitioner was a convicted felon. Under Kentucky law, she was stripped of her right to: vote, hold a public office, possess a firearm or have a driver's license under disability. *Id.* at 695 (*citing* KY. CONST. § 145, KY. CONST. § 150, KY. REV. STAT. ANN. § 29A.080(2)(e) (2006); KY. REV. STAT. ANN. § 527,040 (2006); KY. REV. STAT. ANN. § 189A.070, KY. REV. STAT. ANN. § 532.080 (2006). Under Ohio law, similar rights–possessing a firearm, voting, serving as a juror–are stripped from a person convicted of a **felony** under the laws of the State of Ohio. OHIO REV. CODE § 2967.16 (Thomson Rueters/West 2008).

The Magistrate finds the presumption applied by the Court in *Gentry* does not apply in this case since Petitioner was convicted on six misdemeanors. Petitioner has not made a minimal showing of possible collateral consequences resulting from such conviction of misdemeanors. Her claims–(1) the statute on which her conviction was based was vague and overly broad, (2) Ohio's law on indirect criminal contempt is overly broad and vague; (3) the prosecutor retaliated against her for exercising her First Amendment right to engage in free speech; (4) she was deprived of the right to an appointment of counsel; and (5) the prosecutor failed to prove her guilt beyond a reasonable doubt--are neither severe nor immediate and thus, such claims are not sufficient to give her a substantial stake in the judgment of conviction that survives the satisfaction of the sentence imposed. Petitioner has not demonstrated that there is some concrete and continuing injury other than the incarceration itself.

11

The Magistrate recommends that the Court dismiss this case as Petitioner's challenge to her conviction and its attendant direct and collateral consequences are moot as a result of her release.

## CONCLUSION

For the foregoing reasons, the Magistrate recommends that the Court grant the Motion to Dismiss the Writ of Habeas Corpus and terminate the referral to the undersigned Magistrate.

/s/ Vernelis K. Armstrong
United States Magistrate Judge

Dated: 04/14/09

## NOTICE

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed.

Please be advised that, pursuant to rule 72.3(b) of the local rules for this district, the parties have ten (10) days after being served in which to file objections to said report and recommendation. A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the sixth circuit court of appeals, in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals. In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.