IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Elsebeth Baumgartner, | Case No. 3:07 CV 878 |
| Petitioner, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Robert L. Bratton, | |
| Respondent. | |

**INTRODUCTION**

Petitioner Elsebeth Baumgartner filed a Petition for a Writ of Habeas Corpus (Doc. No. 1). This Court has jurisdiction under 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). Petitioner was released from prison the day after she filed this Petition. She seeks an order vacating her conviction, along with restitution of $2,700 in criminal fines.

The case was referred to United States Magistrate Judge Vernelis Armstrong for a Report and Recommendation (R&R) pursuant to Local Rule 72.2(b)(2). The Magistrate found that Petitioner has abandoned or procedurally defaulted on five of her ten original claims. Petitioner did not object to this conclusion, and this Court finds the Magistrate's analysis in this regard to be correct.

The Magistrate also recommended dismissing the remaining claims because the controversy had been mooted due to Petitioner's release from custody, and no collateral consequences existed to

sustain her claims (Doc. No. 30). However, this Court previously addressed the mootness issue and determined that Petitioner's $2,700 fine is a serious enough collateral consequence to satisfy Article III's requirement of a "case or controversy" (Doc. No. 18). Respondent also concedes Petitioner's claims are not moot (Doc. No. 32, p. 2). Accordingly, this Court will address the merits of Petitioner's five remaining claims *de novo*. *See Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981); 28 U.S.C. § 636(b)(1)(B) & (C).

## BACKGROUND

Petitioner did not object to the factual and procedural history set forth in the R&R. The R&R accurately reports that history, and this Court adopts that portion of the R&R in its entirety. As a brief background, Petitioner was cited by Judge Richard Markus for criminal contempt for accusing various Ohio judges (including Judge Markus, the presiding judge) of unethical, illegal, and immoral conduct during a civil suit in Ottawa County, Ohio. Those accusations were made in documents filed with the court. In a separate, later proceeding before Judge David Faulkner, she was convicted of six counts (involving twenty-seven "sub-counts") of contempt.[1] Petitioner was sentenced to 120 days in jail and fined $2,700.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, provides the standard of review federal courts must apply when considering applications for a writ of habeas corpus. Under AEDPA, a writ of habeas corpus may issue only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application

---

[1] There is no right to a jury trial in contempt proceedings, provided the penalty imposed does not exceed six months. *Taylor v. Hayes*, 418 U.S. 488, 495 (1974).

of . . . clearly established federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor*, 529 U.S. 362, 412 (2002). A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Id.* at 405. In addition, Petitioner has the burden, by clear and convincing evidence, of rebutting the presumption that the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1); *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

## DISCUSSION

In her five remaining claims, Petitioner argues: (1) the Ohio standards for indirect criminal contempt are void for vagueness under the Fourteenth Amendment's due process clause; (2) Ohio's law on indirect criminal contempt is content-based, over broad, and vague in violation of the First Amendment; (3) the prosecutor retaliated against her for exercising her First Amendment right to engage in free speech; (4) she was deprived her Sixth Amendment right to counsel; and (5) there was insufficient evidence to convict her of contempt.

**Fourteenth Amendment**

Petitioner's first claim is that the Ohio standard for criminal contempt is unconstitutionally vague under the Fourteenth Amendment's Due Process Clause. A standard for criminal conduct is void for vagueness if "it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden . . . ." *U.S. v. Bryant*, 716 F.2d 1091, 1095 (6th Cir. 1983) (citing *Bouie v. Columbia*, 378 U.S. 347 (1964)). Ohio courts define contempt generally as "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *State ex rel. Corn v. Russo,* 90 Ohio St. 3d 551, 554 (2001)

(internal quotation omitted); *see also* Ohio Revised Code § 2705.02 (listing specific conduct warranting contempt).

Though that standard is indeed quite broad, it is in line with the view of the United States Supreme Court, which has held that every court has broad power to use criminal contempt proceedings to vindicate its authority. *See, e.g.*, *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) ("The traditional justification for the relative breadth of the contempt power has been necessity: Courts independently must be vested with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and . . . to preserve themselves and their officers from the approach and insults of pollution."); *cf. U.S. v. Baxley*, 228 F. App'x 901, 903-904 (11th Cir. 2007) (rejecting void-for-vagueness challenge to federal contempt statute, 18 U.S.C. § 401). Because the Supreme Court has endorsed a broad view of a court's contempt authority, the state appellate court's conclusion that the Ohio standard is constitutional is not contrary to clearly established federal law.

**First Amendment**

Petitioner's second claim -- that the standard for indirect criminal contempt is content-based, over broad, and vague in violation of the First Amendment -- fails for similar reasons. The contempt standard is directed not at the content of speech, but at the effects of that speech on court proceedings. Again, because the Supreme Court has endorsed a broad view of a court's contempt authority, *see Bagwell*, 512 U.S. at 831, the Ohio standard for criminal contempt (which Petitioner challenges on its face) is not contrary to First Amendment principles.

**Retaliatory Prosecution**

Petitioner asserts in her third claim that prosecution for her statements made within her legal documents amounted to a denial of access to the courts, her right to petition for redress of grievances under the First and Fourteenth Amendments, and her right to be free from retaliatory prosecution. However, "there is no constitutional right to file frivolous litigation." *U.S. v. Miller*, 531 F.3d 340, 351 (6th Cir. 2008) (quoting *Wolfe v. George*, 486 F.3d 1120, 1125 (9th Cir. 2007)). Petitioner offers no facts to support her litany of accusations against Judge Markus and other judicial officers. Thus, instituting contempt proceedings for those statements, after she was given notice, did not violate Petitioner's constitutional right of access to the courts. Indeed, she had full and fair access.

**Sixth Amendment -- Deprivation of Counsel**

Petitioner's fourth claim is that she was denied counsel in violation of the Sixth Amendment. The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all "critical stages" of the criminal process. *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. Ohio 2006) (citing *United States v. Wade*, 388 U.S. 218, 224 (1967)). "Although the Constitution does not force a lawyer upon a defendant, it does require that any waiver of the right to counsel be knowing, voluntary, and intelligent." *King*, 433 F.3d at 490 (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)).

The state courts determined that Petitioner was not entitled to appointed counsel, and Petitioner now has the burden of rebutting that determination by clear and convincing evidence. Petitioner (herself a lawyer) never filed an affidavit of indigency entitling her to appointed counsel. Moreover, she retained counsel throughout her numerous prior adventures throughout the Ohio court system. It is not entirely clear when she parted with her last retained counsel, but she did not seek appointed counsel until one week prior to the commencement of her criminal contempt trial (Doc. No.

5

25-6, p. 2). Noting that Petitioner's motion was filed some three months after the court-imposed deadline for motions, the judge denied the motion (Doc. No. 25-6, p. 2). In light of Petitioner's failure to file an affidavit of indigency, her history of retained counsel, and her eleventh-hour request for appointed counsel, it was reasonable for the state court to determine that she was not entitled to appointed counsel. Petitioner has not met her burden of rebutting this conclusion by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Petitioner's Sixth Amendment argument is unavailing.

### Sufficiency of the Evidence

Petitioner's final remaining claim asserts that the State failed to prove beyond a reasonable doubt her guilt on 27 counts of indirect criminal contempt. Specifically, Petitioner argues that the State failed to show how her statements tended to impede the administration of justice.

On sufficiency of the evidence challenges, habeas relief is warranted "only where the court finds, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (internal quotation omitted). This review involves two levels of deference: "First, deference should be given to the trier-of-fact's verdict," and second, deference should be given to the state court of appeals' "consideration of the trier-of-fact's verdict." *Id*. This standard is to be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*

To sustain an indirect criminal contempt charge, there must be evidence that the accused intended to bring the administration of the law into disrepute or intended to impede, embarrass, or obstruct the court in the performance of its functions. *State ex rel. Corn v. Russo,* 90 Ohio St. 3d 551

6

(2001). The State presented evidence that Petitioner made numerous unsubstantiated accusations in documents filed with the court. Petitioner's frivolous allegations against Judge Markus and others (set forth in detail in the Magistrate's R&R) included making false statements, conducting secret proceedings, colluding with opposing parties, fraud, having a hidden agenda, racial and religious bigotry, and even torture and bondage.

The trial court noted that Petitioner was highly intelligent and fully aware of the gravity of her actions, and concluded that her specific intent was to disrupt the proceedings in the underlying civil case. The court based this finding on Petitioner's own testimony that she was "a practicing attorney who had practiced law at 'elite levels'" and had expertise in other highly technical fields (Doc. No. 25-5, p. 2). Furthermore, Judge Markus warned Petitioner that her comments were improper and might constitute criminal contempt, yet she continued with her frivolous filings (Doc No. 25-7, p. 40; Doc. No. 25-8, p. 89). This evidence is not in dispute, and it could reasonably lead a trier of fact to the conclusion that Petitioner's repeated conduct was intended to disrupt the court proceedings.

Both the trial court and the state appeals court were acutely aware that not every act of misconduct by a litigant rises to the level of criminal contempt. As the appeals court noted:

> We recognize that judges can be subjected to rude and insolent comments and behavior. We also recognize that judges must necessarily withstand this rudeness and insolence on occasion. A judge's life is not for the meek. Having said that, we finally recognize that there is behavior so outrageous that it constitutes an attack on the legal system and is, therefore, contemptuous.

*State v. Baumgartner*, 2008 WL 612901, at *12 (Ohio App. 2008) (internal citations omitted). It was reasonable for the Ohio courts to conclude that Petitioner's conduct, especially coming from a highly intelligent (albeit disbarred) attorney, fell on the "outrageous" side of that line.

7

**CONCLUSION**

Though citing Petitioner for criminal contempt was a strong response to her own offensive conduct, the question before this Court is whether Petitioner has shown that her conviction was contrary to or an unreasonable application of clearly established federal law. For the reasons stated above, this Court concludes that it was not. Accordingly, the Petition for a Writ of Habeas Corpus is dismissed. Further, under 28 U.S.C. §§ 1915(a) and 2253(c), this Court certifies that an appeal of this action could not be taken in good faith and that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, this Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

                                                         s/ *Jack Zouhary*
                                                    JACK ZOUHARY
                                                    U. S. DISTRICT JUDGE

January 28, 2010